MARJORIE J. TUTTLE vs. PAUL J. McGEENEY
(and a companion case[1]).

Middlesex.   December 4, 1961. — April 16, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& SPIEGEL, JJ.

*Negligence,* Motor vehicle, Contributory, Imputed, Violation of law. *Motor Vehicle,* Operation. *Practice, Civil,* Exceptions: saving of exception; Judicial discretion; Auditor: findings; Charge to jury; New trial.

An exception by the defendant at the trial of an action to a ruling excluding evidence on cross-examination of a witness was not seasonably taken under Rule 72 of the Superior Court (1954) where a number of questions by the defendant to the witness and a recess intervened between the ruling and the claiming of the exception.   [204]

In an action for personal injuries, it is within the discretion of the trial judge whether injured parts of the plaintiff's body should be exhibited to the jury.   [205]

At the trial of an action by an unlicensed driver of an automobile for personal injuries sustained in a collision with the defendant's automobile in an intersection which the plaintiff entered without stopping at a stop sign, there was no error in the denial of the defendant's request for an instruction that "the violation of these various laws involved in this case, if it contributed to the injury, bars recovery," where the request was

---

[1] The companion case is by William Bowers against the same defendant.

Tuttle *v.* McGeeney.

not made in writing before the closing arguments as required by Rule 71 of the Superior Court (1954) and the legal significance of the want of a license and the failure to stop was made clear to the jury by instructions given.   [205]

Evidence apart from an auditor's report at the trial of an action by the driver of an automobile for personal injuries sustained in a collision with the defendant's automobile in an intersection supported an inference that the plaintiff exercised due care in the circumstances, so that an instruction by the judge to the jury that the auditor's report was "the same as any other piece of evidence" was correct as applied to a finding by the auditor that the plaintiff "was not in the exercise of due care." [205–206]

At the trial of an action for injuries sustained when an automobile owned by the plaintiff was driven by another person with the plaintiff at his side and collided at an intersection with the defendant's automobile, evidence apart from an auditor's report was insufficient to overcome the compelling effect of a finding by the auditor that the plaintiff had not "sustained the burden of proving that she had surrendered control of her automobile" to the driver, so that an instruction by the judge to the jury that the auditor's report was "the same as any other piece of evidence" was erroneous as applied to the auditor's finding with respect to the surrender of control by the plaintiff.   [206–207]

At the trial of an action for injuries sustained when an automobile owned by the plaintiff, while operated by another person with the plaintiff at his side, collided with the defendant's automobile, there was on the evidence error on the part of the judge in refusing to instruct the jury that "there being no evidence that . . . [the plaintiff] relinquished her right of control over her motor vehicle to her operator . . . she is responsible for his conduct."   [207]

The defendant in an action for negligence had no standing to complain of error on the part of the trial judge in failing to instruct the jury adequately on the issue of the plaintiff's contributory negligence where the defendant did not direct the judge's attention to such failure.   [207]

Where actions by the owner of an automobile and the driver of that automobile against the operator of another automobile for injuries arising from a collision between the two automobiles while the plaintiff owner was riding in her automobile with the plaintiff driver were tried together and verdicts were rendered for both plaintiffs, but erroneous instructions on the issue of surrender of control by the plaintiff owner of her automobile to the plaintiff driver required setting aside of the verdict for the plaintiff owner and such instructions were confusingly and misleadingly interwoven with the issue of the plaintiff driver's contributory negligence, the erroneous instructions were harmful to the defendant in both actions and substantial justice required a new trial of both.   [207–208]

Two ACTIONS OF TORT. Writs in the Third District Court of Eastern Middlesex dated February 24, 1955, and January 26, 1956, respectively.

Upon removal to the Superior Court the actions were tried together before *Swift, J.*

*David D. Leahy,* for the defendant.

*Nathan Goldstein,* for the plaintiffs.

SPIEGEL, J.   These are two actions of tort arising out of a collision of motor vehicles.   They were consolidated and tried together.   In the first case, Marjorie Tuttle sought to recover for personal injuries and property damage to her automobile.   The other action was by William Bowers to recover for personal injuries.   A count for consequential damages by the mother of Bowers was waived during the trial.   An auditor, to whom the cases were referred, found for the defendant in each case.   The cases were subsequently tried to a jury, who returned verdicts for the plaintiffs.

The cases are here on exceptions of the defendant to the judge's ruling that an exception taken immediately after the judge had returned from a recess which he called without warning was claimed too late; to the judge's refusal to give certain instructions to the jury; to his giving certain instructions to the jury requested by the plaintiffs; and to certain parts of the judge's charge.

The auditor's report is substantially as follows:   The accident happened on February 3, 1955, at about 12:30 P.M. at the intersection of Harvard and Portland streets in the city of Cambridge.   Traffic entering the intersection from Harvard Street is governed by stop signs and flashing red lights.   The plaintiff William Bowers and his brother, Donald, were helping the plaintiff Tuttle to start her car by pushing it with a car owned by their mother.   They pushed the Tuttle car for a considerable distance without success. William Bowers, at the request of Tuttle, took the wheel of her car.   At this point the Tuttle car was located on Harvard Street about one hundred feet from the intersection of Portland Street.   Donald Bowers resumed pushing the Tuttle car and at a point about sixty feet from the intersection it started.   William Bowers drove the car toward the intersection at a speed of about twenty-five miles per

hour. He slowed down at the intersection but did not come to a stop as required by the stop sign and flashing red light. He continued into the intersection and "when the Tuttle car was about in the middle of the intersection . . . it was in [a] collision with a car owned and operated by the defendant." William Bowers was fifteen years old at the time of the accident and did not have a license to operate an automobile.

The auditor found that the defendant McGeeney was proceeding along Portland Street; that he "entered the intersection of Harvard Street at a speed that was not reasonable and proper under the circumstances and conditions then and there prevailing"; and that he saw the Tuttle car "before it reached the stop sign and assumed that it would come to a stop before entering the intersection."

The auditor concluded that "[o]n all the evidence and the reasonable inferences to be drawn therefrom . . . the plaintiff William Bowers was not in the exercise of due care"; that "the plaintiff Tuttle has not sustained the burden of proving that she had surrendered control of her automobile to the plaintiff Bowers"; that "accordingly . . . the negligence of the plaintiff Bowers is imputed to the plaintiff Tuttle"; and that ". . . this accident could have been avoided by the exercise of due care on the part of either operator."

At the trial William Bowers testified that, after he and his brother had pushed the Tuttle car for some distance, both cars stopped on Harvard Street and he "went up to Miss Tuttle and said, 'Well, let me try it.' And he got into her car, taking over the wheel. She sat next to him to his right. The Tuttle car was about 40 to 60 feet from Portland Street when he got behind the wheel." It was pushed "one or two car lengths when it kicked right over." He "approached Portland Street on Harvard Street at 6 to 8 miles an hour. There was a stop sign and a flashing red light facing him. As he came up to the corner of Harvard and Portland Streets he stopped the Tuttle car." He could not see to his right down Portland Street. "He

rolled ahead a couple of feet . . ." and "[a]bout 150 feet away, he saw a car [the defendant's] coming into Portland Street. He was going to turn the car back over to Miss Tuttle as he crossed Portland Street." He was proceeding through the intersection at "about 5 to 9 miles per hour." He saw the defendant's car again when it was five to eight feet away "when Miss Tuttle screamed."

The plaintiff Tuttle testified that "[a]s they approached the intersection . . . Bowers applied the brakes and stopped the car. He looked to his left and to his right and proceeded across the intersection. . . . When she looked to the right she saw a car about 75 feet away, which was the one involved in the collision with them. . . . When her car was about three-quarters across the intersection the defendant's car had reached the intersection. . . . They were . . . going 6 to 8 miles an hour across the intersection in first gear."

1. On cross-examination, the plaintiff Tuttle testified that "[s]he had scars on her person which she could show to the jury." She was asked, "Do you have anything on your person that you could show to the jury?" She replied, "Yes, sir." The judge would not allow an exhibition of such marks or scars to the jury. No exception was taken at that time and the defendant's counsel proceeded with a number of questions regarding the scars on Tuttle's person. There was a bench conference and then the judge said, "Take the morning recess." Immediately upon reconvening, the defendant's counsel asked that an exception be noted to the judge's ruling. The judge refused, stating that "the exception has got to be taken when it is excluded." The defendant's counsel excepted to the judge's refusal to note the exception.

An exception to an adverse ruling is to be taken at the time such ruling is given. Rule 72 of the Superior Court (1954). A number of questions by the defendant's counsel, as well as the recess, intervened between the ruling and the attempted exception. The judge was correct in ruling that the defendant's exception was claimed too late.

Furthermore, whether injured parts of the body should be exhibited to the jury is a matter to be left to the discretion of the trial judge. See *Blanchard* v. *Holyoke St. Ry.* 186 Mass. 582, 583.

2. The judge charged, as requested by the plaintiff Bowers, that "if it is found that William Bowers did not stop at the stop sign, the failure to stop . . . will not preclude recovery for the injuries sustained by William Bowers, caused by the negligence of the defendant, unless such failure was a contributing cause to the accident"; and "[t]hat the operation of an automobile on the highway by an unlicensed person such as the plaintiff William Bowers does not make him a trespasser and is not conclusive against his right to recover for an injury he sustained in a case in which his lack of a license is not a contributory cause of his injury."

The defendant excepted to the giving of these requested instructions and also to the judge's refusal of his request to "tell the jury that the violation of these various laws involved in this case, if it contributed to the injury, bars recovery. . . ." This latter request was not made in writing before the closing arguments as required by Rule 71 of the Superior Court (1954) nor did it specify the statutes involved.

Furthermore, the instructions requested by the plaintiff Bowers and given by the judge adequately informed the jury as to the legal significance of the violation of the penal statutes to which the instructions referred. *Baggs* v. *Hirschfield,* 293 Mass. 1, 3. *Kralik* v. *LeClair,* 315 Mass. 323, 326. *Berardi* v. *Menicks,* 340 Mass. 396, 400.

3. With regard to the introduction of the auditor's report the judge charged that "[t]hat report is the same as any other piece of evidence . . .. It stands on the same footing. It is evidence. It hasn't any precedence because it goes to an auditor. . . . But so far as the auditor's report goes, it has the same standing as any other evidence that is presented to this jury."

The defendant excepted to the instruction of the judge "with reference to the force of an auditor's report."

The defendant contends that there was no evidence introduced at the trial "to contradict or overrule" the auditor's finding that the plaintiff Bowers was not in the exercise of due care or his finding that the plaintiff Tuttle did not sustain the burden of proving that she had surrendered control of her automobile and that therefore the auditor's findings were "decisive."

Findings of fact by an auditor are prima facie evidence. G. L. c. 221, § 56. "The rule as to auditors is, that a finding of fact by an auditor retains the artificial legal force and compelling effect which it has by virtue of being 'prima facie evidence,' until, and only until, evidence appears that warrants a finding to the contrary. . . . The finding of an auditor, after evidence to the contrary appears, remains evidence . . . . The evidence that warrants a finding contrary to that of the auditor . . . may consist of evidence outside the report, introduced at the trial . . ., or of subsidiary or specific findings of fact by the auditor, from which an inference may be drawn as to an ultimate or other fact, contrary to the finding of the auditor with reference to that fact." *Cook* v. *Farm Serv. Stores, Inc.* 301 Mass. 564, 566–567.

"It was not necessary for the judge to state to the jury this rule [as to the effect of an auditor's report] in its entirety. It was enough to tell them the result of the application of the rule in the present case." *Herbert* v. *Anbinder,* 302 Mass. 396, 398.

There was sufficient evidence introduced at the trial to support an inference that Bowers was in the exercise of due care. The judge's charge regarding the effect of the auditor's report was correct in so far as it applied to the auditor's finding of lack of due care on the part of the plaintiff Bowers.

Apart from the auditor's report, the only evidence introduced on the issue of Tuttle's retention of control was the testimony that Tuttle first met Bowers about a half hour before the accident; that Bowers said, "Well, let me try it"; that he took over the wheel; that Tuttle sat next to

him; and that he was going to turn the car back over to Tuttle when they had crossed Portland Street. This evidence was insufficient to overcome the compelling effect of the auditor's finding that Tuttle did not sustain the burden of proving surrender of control.

"Control is an incident of ownership, and continues in the owner-occupant of an automobile that is being driven along the public way in the absence of any evidence tending to show that it has been transferred by the owner to the operator." *Mendolia* v. *White,* 313 Mass. 318, 321.

The judge's charge that an auditor's report "is the same as any other piece of evidence" was erroneous in so far as it applied to the auditor's finding with respect to surrender of control.

4. The defendant excepted to the judge's refusal to give the following requested instruction numbered 1: "There being no evidence that Marjorie Tuttle relinquished her right of control over her motor vehicle to her operator, William Bowers, she is responsible for his conduct." In view of the fact that Tuttle failed to prove surrender of control, the conduct of Bowers in operating the vehicle is attributed to her. *Mendolia* v. *White, supra,* 319–320. *Menzigian* v. *LaRiviere,* 334 Mass. 610, 612. Under these circumstances it was error to refuse to give the requested instruction.

The judge compounded the error when, in part of his charge, he stated, "Now, if she [Tuttle] was in control of the car, even if the young man [Bowers] who volunteered to help her start the engine was negligent, it does not prevent her from recovering, provided she proves that the driver of the other car, the defendant here, was negligent."

5. The judge failed to instruct the jury on the issue of contributory negligence except as it related to the violation of certain statutes. The failure to so charge was error. The defendant, however, did not properly direct the attention of the judge to his omission to adequately instruct the jury on this issue. The defendant, therefore, has no standing to object. *Donnelly* v. *Larkin,* 327 Mass. 287, 289.

6. We think the instructions on the issue of control in-

terwoven, as it was, with the issue of Bowers's contributory negligence, tended to confuse and mislead the jury. The cases having been tried together, we are of opinion that the erroneous instructions were harmful to the defendant in each of the actions. Substantial justice requires that there be a new trial in each case. See G. L. c. 231, § 124; *Pilos* v. *First Natl. Stores Inc.* 319 Mass. 475, 479.

*Exceptions sustained in each case.*