COMMONWEALTH *vs.* ISADOR RUTLEDGE & others.

Suffolk. October 9, 1969. — December 22, 1969.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Practice, Criminal,* New trial.

Justice required a new trial of indictments against three men for murder and related offences in view of the circumstances that the record left it doubtful whether three men or only two were involved in the crimes and that the testimony of eyewitnesses thereto regarding identification of the defendants was far from convincing.

INDICTMENTS found and returned in the Superior Court on April 10, 1968.

The cases were tried before *Sullivan,* J.

*Lawrence D. Shubow* for the defendant Rutledge.

*Stephen I. Lipman* for the defendant Hardy.

*Michael R. Pizziferri (Joseph A. Todisco & Reuben S. Dawkins* with him) for the defendant Westry.

*James F. Sullivan,* Assistant District Attorney, for the Commonwealth.

SPIEGEL, J. The three defendants were tried on indictments charging them with murder in the first degree, assault with intent to murder and assault and battery by means of a dangerous weapon. The jury returned verdicts of guilty in the second degree on the murder indictment and guilty as charged on the other indictments. The defendants were sentenced to concurrent terms of life imprisonment on the murder charge, from nineteen to twenty years on the assault

with intent to murder charge, and from nine to ten years for the charge of assault and battery by means of a dangerous weapon. The defendants have appealed under the provisions of G. L. c. 278, §§ 33A–33G. The case is here on a summary of the record, a transcript of the evidence and assignments of error.

On December 31, 1967, about 8 P.M. a party of four consisting of one Albert Mitchell (the victim of the homicide), his wife one Marcia Mitchell, one Robert LeBaron, and one Andrea LeBrun, met at a bar called "Crusher Casey's." They celebrated New Year's eve there by partaking of alcoholic refreshments until approximately 2 A.M. Shortly thereafter the Mitchell party accompanied by the bartender, one Stephen Casey, approached the front door of "Crusher Casey's" preparatory to leaving the establishment. LeBaron, LeBrun, and Marcia Mitchell stepped onto the sidewalk. Mitchell remained in the doorway conversing with Casey. At that time *two* men attempted to gain entry to "Crusher Casey's" but Casey refused to allow them to enter stating that the bar was closed. Whereupon, one of the *two* men "pulled a gun" and fired several shots. Casey was seriously wounded and Mitchell was shot three times. About fifteen minutes after the shots were fired Casey and Mitchell were rushed to the hospital where Mitchell was pronounced dead on arrival.

LeBaron testified that of the *two* men who attempted to enter the bar, one wore "a skully cap, black, sunglasses, a long black overcoat" and was "[a]pproximately 5' 10" or 5' 11"'" in height. He was the one who did the shooting. The other man was "[m]aybe 5' 6" or 5' 7"'" in height, "had a black soft hat, and a long overcoat." LeBaron stated that the defendant Isador Rutledge, "looks like the man that did the shooting." He was unable to identify the other man.

Marcia Mitchell testified that she saw *two* men approach the doorway to "Crusher Casey's." Her description of the men was substantially the same as that of LeBaron. In addition she described the taller of the *two* men as having

"high cheekbones and was thin" and he was the one who did the shooting. When asked to identify the man in the courtroom she pointed to Rutledge and said, "I can't be positive. He looks like him. I don't know." She was unable to identify the other man and merely stated he "was quite a bit shorter than the other man."

Andrea LeBrun testified that she was "positive" that she saw only *two* men. Her testimony regarding the description of the men substantially corroborated that of LeBaron and Marcia Mitchell. She further stated that the man who did the shooting was the taller of the *two* and "had high cheekbones, prominent cheekbones, a narrow face, and a narrow chin." Pointing to Rutledge, she said that "[a]s well as I can remember, the man that's sitting on the right of the three men" did the shooting. She, too, was unable to identify the second man.

Casey testified that Rutledge was the man "who come to the door" and "wanted to gain entrance." He saw another man standing behind Rutledge. When asked if Rutledge was the man who did the shooting Casey said, "I couldn't swear fully if he did the shooting. I couldn't, because I was so close to him when I got shot. I was shot from a low range. He could have shot me. Maybe the man behind him could have shot me." He pointed to the defendant Willie Lee Hardy as the man who looked like the one who was behind Rutledge.

Another witness, one Christine Edwards, testified to events occurring subsequent to the shooting at "Crusher Casey's." She stated that at approximately 3:30 A.M. on January 1, 1968, the *three* defendants came to the apartment where she and Rutledge lived, at 318 Blue Hill Avenue, Roxbury, and told her about shooting two people at "Crusher's." She said each of the *three* defendants claimed to have done the shooting. She described what each of the defendants was then wearing. Rutledge was wearing a "dirty green" three-quarter length jacket and a regular soft hat. Hardy wore a dark trench coat, and a tam ("a hat that has a little brim . . . [which] doesn't go all the way around");

Ervin Westry, the third defendant, was dressed in a dark overcoat, a hat something like a tam and wore dark rimmed sunglasses.  Westry had a gun in his belt which he gave to her.  Finally, she testified to a conversation that took place among the *three* defendants during which Hardy said, "[T]hey should have . . . hit the place since they had everything going their way."

Each of the defendants filed a motion for new trial.  On November 19, 1968, a hearing on the motions was held at which Edwards recanted her prior testimony as it related to Rutledge, and stated that Rutledge had spent the entire evening of December 31, 1967, with her in the apartment at 318 Blue Hill Avenue.  In explaining the discrepancy in her testimony she stated, "Well, at the time that I told . . . . [the prior story] to the policemen Isador and I had been fighting, and in the fight he cut me, and I cut him, and I was just — I knew that if — well, I had been cut by him before.  I have been to the jail and they tell me '[y]ou've got to go back the next day at 8:00 o'clock and go to Roxbury Court to take out a warrant.'  Well, I had cut him at that time, I mean, you know.  I was just afraid.  So when I went down there after I had cut him, I knew that I couldn't get him arrested until the next day, and I had no place to go but back to 318 Blue Hill Avenue, and after stabbing him I couldn't do it, so the only thing I could do was just to involve him in something where I knew that they would hold him until I could get away."  The trial judge denied the motions to which the defendants excepted.

We are aware of the duty imposed upon us by G. L. c. 278, § 33E, as amended through St. 1962, c. 453.  This statute requires us in a capital case to consider the "whole case" and "if satisfied that the verdict was against the law or the weight of the evidence, or because of newly discovered evidence or for any other reason that justice may require . . . [we may] order a new trial."  *Commonwealth* v. *Baker*, 346 Mass. 107, 108–109.

A careful review of the entire record impels us to have profound doubt as to whether *three* men were involved in

the commission of this crime. Four of the five witnesses for the Commonwealth, who were eyewitnesses to the event, testified that there were only *two* men. The fifth witness for the Commonwealth was not present when the crime was committed. She testified at the trial that there were *three* men, but subsequently, at a hearing on a motion for a new trial, changed her testimony. In addition, the testimony of the eyewitnesses to the crime regarding identification of the defendants was far from convincing. We are of opinion that justice requires a new trial so that the guilt or innocence of each defendant may be properly established.

If but *two* men were involved in the shooting it would be a manifest injustice to find *three* men guilty of the lesser offences of assault with intent to murder and assault and battery by means of a dangerous weapon. These offences are so inextricably interwoven with the murder committed that justice requires there also be a new trial on the lesser offences. *Commonwealth* v. *Stasiun,* 349 Mass. 38, 54. See *Tuttle* v. *McGeeney,* 344 Mass. 200, 207–208. See also *Commonwealth* v. *McCarthy,* 348 Mass. 7, 14–15.

In view of the foregoing and because we deem it unlikely that many questions raised by the assignments of error will occur at a retrial of the case, we refrain from discussing them.

The judgments are reversed and the verdicts set aside.

*So ordered.*