COMMONWEALTH *vs.* VICTOR WALDO RICHARDSON.

Hampshire.    April 9, 1973. — June 8, 1973.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Practice, Criminal,* New trial, Appeal.

Where, after trial of indictments before a judge of the Superior Court
sitting without jury, a motion for a new trial was heard by another
judge of that court upon the record of the original trial, the findings of
the trial judge, and certain affidavits, this court, upon appeal from a
denial of the motion, was in the same position as the judge who heard
the motion and, in the circumstances, in its discretion considered the
case broadly to determine whether, within G. L. c. 278, § 29, as
appearing in St. 1966, c. 301, "justice may not have been
done." [349-353]

Where this court, on appeal from denial by a judge of the Superior Court
of a motion for a new trial of criminal cases involving certain crimes of
violence, was in the circumstances in the same position as the judge
who heard the motion, who was not the trial judge, and on a broad
review under G. L. c. 278, § 29, as appearing in St. 1966, c. 301,
entertained serious doubts as to the validity of the defendant's
convictions, especially in view of certain affidavits filed with the
motion and of testimony at the trial containing discrepancies and
inconsistencies, a new trial was ordered so as to avoid a substantial
risk of a miscarriage of justice. [353]

INDICTMENTS found and returned in the Superior Court
on October 9, 1970.

A motion for a new trial was heard by *Tisdale, J.*

*William P. Homans, Jr.,* for the defendant.

*John M. Finn,* Assistant District Attorney, for the
Commonwealth.

GOODMAN, J.    These cases, in which the defendant
Richardson was convicted on three indictments charging
armed robbery and four indictments charging assault with
a dangerous weapon (a gun),[1] come to us on an appeal from

---

[1] He was sentenced to a term of seven to ten years on each of the three

the denial of the defendant's motion for a new trial alleging newly discovered evidence and that the convictions were against the weight of the evidence. The defendant was tried under G. L. c. 278, §§ 33A-33G, by a Superior Court judge (the trial judge) sitting without jury who made detailed findings of fact. The motion for a new trial based on affidavits was heard by a different judge (the motion judge), the trial judge having retired. We are, therefore, in the same position as the motion judge to review the original trial record and the findings of the trial judge, which are before us, in the light of the affidavits submitted with the motion and to evaluate the weight of the evidence at the trial. In these unusual circumstances, though the motion for a new trial requires a review of the evidence, we, "in passing upon the questions presented for review, may consider the fact that the judge who heard the motions had before him nothing but the stenographic report of the evidence at the trial [and the trial judge's findings]". *Commonwealth* v. *Gedzium,* 261 Mass. 299, 304. Therefore as matter of discretion (see *Commonwealth* v. *Libby,* 358 Mass. 617, 619), we consider this case broadly and determine whether "justice may not have been done," under the expanded test of G. L. c. 278, § 29, as liberalized by St. 1966, c. 301. *Commonwealth* v. *Stout,* 356 Mass. 237, 242. See *Commonwealth* v. *Ransom,* 358 Mass. 580, 583.

The following appears from the findings of the trial judge and such of the testimony as is obviously credible. The defendant at the time of the robbery was a junior at Amherst College and, sometime in the afternoon preceding the robbery, drove to Springfield with Ronald Young, a fellow student. There they looked at clothes in a store on Main Street, downtown, and after a while went into a pool room where they encountered Tubbs and King,[2] with whom

indictments for armed robbery and to a term of three to five years on each of the four indictments for assault with a dangerous weapon, all the sentences to be served concurrently. The defendant was also convicted of possession of marijuana and sentenced to two and one-half to three and one-half years to be served concurrently with the other sentences. The motion for a new trial does not address itself to this conviction.

[2] Tubbs and King testified for the Commonwealth.

Commonwealth v. Richardson.

they were acquainted. Tubbs and King had participated in a tutorial program in which Young and the defendant had been tutors. "Acced[ing] to their [Tubbs' and King's] request," as the trial judge put it in his findings, the defendant and Young drove them back to Amherst.[3] The testimony varies as to just when they were dropped off.[4] The robbery occurred sometime between midnight and 12:15 A.M. on September 30.[5] At that time Tubbs and King, armed with a gun, entered a room in a University of Massachusetts dormitory occupied by three students (a fourth student was visiting there) and robbed them of various articles of personal property. The defendant, who after arriving in Amherst had gone to a class in Northampton, returned to his dormitory about 10 P.M. and, as the trial judge found, "when actually called upon by telephone after the robberies were committed, he did go after the hour of midnight to transport them away from the scene of the robbery."[6] The police arrived about 12:25 to 12:30 A.M. and arrested the defendant and the other two. They were in the car with the motor running; the stolen property was in the back of the car.

The primary issue in dispute relates to Richardson's involvement in the robbery. The only direct testimony of his implication came from Tubbs and King. Tubbs, in response to the question, "Who said what?", replied, "We

[3] King and Richardson testified that Young was driving. Tubbs, who originally testified that only he, King and Richardson were in the automobile, testified that Richardson was driving. The automobile which the trial judge referred to as the defendant's apparently belonged to a third person who had left it with a group of students who drove it and maintained it.

[4] Tubbs and King testified that they were dropped off at about 10 P.M., having started back to Amherst from Springfield in the afternoon or the early evening. This is at variance with the testimony of Sethard Fisher, who taught at Smith College, that the defendant and Young were present in his class in Northampton between 7:30 and 9:30 P.M. that evening.

[5] This time was established by the victims and corroborated by the police. Tubbs and King testified that the robbery occurred about or shortly after 10 P.M.

[6] The trial judge apparently disbelieved Tubbs' testimony that he phoned Richardson about twenty minutes after 10 P.M. and, after he arrived, told him that Tubbs and King were about to consummate the robbery and did so. This was, of course, inconsistent with the testimony of the victims and the police. Nor did the trial judge believe King's testimony that they called Richardson before the robbery since "it wasn't going to take but a few minutes."

were supposed to go there and take the marijuana; me and King were supposed to go and take the marijuana from these guys at the college." The "agreement" was made by "the three of us, really" while they were in the car. He also testified: "After we talked, the thing was for him to go to his class, take us to U Mass, then go to the class and come back and pick us up." King testified that there was a "roundabout conversation" in the automobile; they told Richardson they were going to "take the reefers," and wanted him to pick them up. He also testified that they made two stops on the way from Springfield looking for a gun.

Young, who lived in the same dormitory as Richardson, testified that he accompanied Richardson from Amherst to Springfield about 2:30 or 3:00 P.M., that they met Tubbs and King about 5:00 or 5:30 P.M., and that they left to go back to Amherst about 6:00 P.M. They took Tubbs and King who had requested a ride and left them off when they arrived at the dormitory in Amherst where Young and Richardson lived. They drove directly to Amherst and made no stops. They then went to class in Northampton from 7:30 to 9:30 P.M. and returned to the dormitory about 10 P.M. Young saw Richardson again at midnight when Richardson left the dormitory. Young testified that they were together during the entire time and that there was no talk of a gun. Nor was there any conversation about Tubbs' and King's getting a ride back from the University of Massachusetts where they were headed. Richardson's testimony on his own behalf was substantially the same as Young's.

We need not analyze in any greater detail the discrepancies, inconsistencies and incoherencies in the testimony of Tubbs and King in an attempt to determine their credibility since the trial judge also did "not give full credence to the testimony of the other two." He did not make an assessment of the truthfulness of Tubbs and King vis-à-vis Richardson[7] but stated in his findings that "the

---

[7] Perhaps the difficulty in this respect stemmed in part from the testimony that Richardson's reputation for truthfulness, honesty and peacefulness was excellent. This was given by the assistant dean of students and dean of freshmen at Amherst

respective testimony of Tubbs and King is so diametrically opposed to that of the defendant Richardson that to find where the truth lies can only be determined by facts concerning which the other witnesses in the cases testified; namely, the testimony of the three witnesses who were robbed and the testimony of the police who came there so quickly after the robbery." He thus found the pre-arrangement necessary to convict Richardson as principal primarily from the circumstantial evidence given by the victims of the crime and the police who apprehended the defendant.

Whether this testimony, in the circumstances of this case, gives rise to an inference that Richardson was a principal (or for that matter an accessory after the fact for which he was not indicted) is a close question. Moreover, our doubts are increased by the affidavits submitted with the motion for a new trial. One Randolph H. Blatch in his affidavit swore that he encountered Tubbs and King at the University of Massachusetts at about 11 P.M., which was prior to the robbery, and that they told him they would need a ride back to Springfield; he agreed to drive them. This was confirmed by the affidavit of Curtis Troy, a student at the University of Massachusetts, from whose room, King testified, the call to Richardson was made. The affidavit stated that Tubbs and King came to Troy's room and told him that Blatch had promised them a ride. Troy's affidavit further stated that they then left and later, upon their return, told Troy they had missed Blatch. They then called Amherst and asked for a ride; he believed they called Richardson. These affidavits thus tend to negate any prearranged plan in which Richardson's role was to drive King and Tubbs. Indeed, the affidavit by Gravina, a student at the University of Massachusetts, indicates the lack of any firm plan, even by Tubbs. That affidavit states that Tubbs asked him for marijuana and when he told Tubbs that he did not have any, Tubbs asked him where he might get some. Gravina suggested Charlie White, one of

College, by Richardson's faculty advisor, and assistant professor of mathematics, by an assistant dean of Amherst College, and by two of Richardson's classmates.

the victims of the robbery. The affidavit further states that Tubbs left but returned to verify White's address.

A careful review of the entire record causes us to have profound doubt whether the defendant's conviction as a principal is consonant with justice. We are satisfied that, in order to avoid a substantial risk of a miscarriage of justice, the defendant should be given a new trial. *Commonwealth* v. *Rutledge,* 356 Mass. 499, 502-503. *Commonwealth* v. *Ransom,* 358 Mass. 580, 583. *Commonwealth* v. *Freeman,* 352 Mass. 556, 564.

> *Order denying motion for new trial on Indictments Nos. 8046-8049, inclusive, and 8051-8053, inclusive, reversed.*
> *Judgments on said indictments vacated and findings of guilty thereon set aside.*
> *Cases to stand for trial.*