COMMONWEALTH *vs.* JEFFREY PAQUETTE. November 6, 1978. The trial judge properly denied the motions for directed verdict filed by the defendant, who appeals (G. L. c. 278, §§ 33A-33G) from a judgment of

conviction of manslaughter. He and two others, Marchand and Doyle, were tried together on separate indictments for murder. Marchand was also found guilty of manslaughter, and Doyle was convicted of assault and battery. The homicide arose out of an altercation when an automobile—a Chevrolet convertible with the top down—drove up to a public telephone which was attached to the wall of a drugstore in an alcove and at which the victim was making a call. The defendant, Doyle, and Marchand were passengers in the Chevrolet, which was being driven by a fourth person. So much was admitted. (There was a dispute whether there was a fifth person, a woman, in the automobile.) It was a clear, warm night, and the jury could have found that the area was well lighted. The evidence against the defendant came primarily from one Mrs. Pinardi who testified that she saw the incident from a window of her apartment across the street from the public telephone. She testified that she went to bed at about 2:00 A.M. and that about two or three minutes thereafter she heard yelling and then wood cracking. At this she jumped out of bed and looked out of the window, where she saw three men—"two in the alcove at the phone booth and one standing a little ways away leaning on a crutch." One of the men in the alcove, whom she identified as the defendant, dressed in a yellow T-shirt and a blue denim jacket, was striking the other (the victim) with something which was either a picket or a crutch. The defendant struck the victim over the head about three times, and the victim slid to the ground. The defendant then kicked the victim, and Mrs. Pinardi yelled, "Leave him alone." At that, the man carrying the crutch (whom she identified as Marchand) started toward the Chevrolet, which was parked in front of the drugstore. The defendant, after further kicking the victim two or three times, turned and went toward the automobile. Mrs. Pinardi then directed her attention to the victim. She saw the automobile leave with four occupants, two in front and two in back, and then called the police. A few minutes later a police officer arrived on the scene and found the victim lying by the public telephone and bleeding; a crutch in four pieces was alongside the body. Also, within a few minutes the Chevrolet was stopped and was brought back to the scene, where Mrs. Pinardi, who had by then come down into the street, identified the defendant and Marchand. From our review of the transcript, we conclude that Mrs. Pinardi's identification of the defendant when the Chevrolet was brought back to the scene—which, as she indicated, was based on his clothing and a "side view" when she "saw him turn to go to the car"—was not at all, as characterized in the defendant's brief, "inconclusive, speculative, and conjectural." It provided the "jury with a sufficient basis upon which to find [the] defendant guilty beyond a reasonable doubt." *Commonwealth* v. *Vitello*, 376 Mass. 426, 461 (1978), citing *Commonwealth* v. *Clifford*, 374 Mass. 293, 296 (1978), and *Commonwealth* v. *Gallagher*, 4 Mass. App. Ct. 661, 662 (1976). Obviously the jury were not required to believe all or any part of the defendant's version of the incident, which would have exonerated him and placed only Doyle and Marchand at the phone booth. See *Commonwealth* v. *McInerney*, 373 Mass. 136, 142, 144 (1977). And the jury could have disregarded the minor discrepancies developed by the cross-examination of Mrs. Pinardi. The defendant points to various differences between her testimony and that of two other women called by the prosecution who testified to their observations from the windows of their respective apartments. But it is not altogether clear that

these differences created inconsistencies, and even if they did, it was for the jury to decide the credibility of each witness and how much of her testimony to accept. See *Commonwealth* v. *McCauley*, 355 Mass. 554, 560 (1969); *Commonwealth* v. *Scanlon*, 373 Mass. 11, 20 (1977). The jury obviously believed Mrs. Pinardi's testimony as to Paquette rather than that of the defendants and others in the Chevrolet who testified that Paquette had never left the automobile. Nor need we attempt to evaluate the evidence as to Marchand and Doyle; their cases are not before us. And, indeed, the jury were instructed to consider the indictments on the basis that there was no joint enterprise. See *Commonwealth* v. *Connearney*, 359 Mass. 200, 202-203 (1971).

We see no reason to reverse the denial by the trial judge of the defendant's motion for a new trial. The basis for the motion was, in effect, the same as the basis for his argument for a directed verdict. See *Commonwealth* v. *Lombardo*, 2 Mass. App. Ct. 387, 392 (1974). The trial judge acted within his discretion. See *Commonwealth* v. *Gagne*, 367 Mass. 519, 526 (1975). Contrast *Commonwealth* v. *Ellison*, 376 Mass. 1, 16-17 (1978); *Commonwealth* v. *Richardson*, 1 Mass. App. Ct. 348, 353 (1973). The case of *Commonwealth* v. *Rutledge*, 356 Mass. 499 (1969), is inapposite. In that case the Supreme Judicial Court had "profound doubt" because all but one witness had identified two participants, and the only one who identified a third participant recanted her testimony. *Id.* at 502-503. Here, Mrs. Pinardi's testimony was not materially shaken and provided a solid basis for the defendant's conviction.

*Judgment affirmed.*

*John J. Harrington* for the defendant.
*Thomas P. Gay,* Assistant District Attorney, for the Commonwealth.